Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel II

| | | |
|---|---|---|
| DEPARTAMENTO DE LA FAMILIA<br>Apelado<br><br>v.<br><br>OFICINA DEL CONTRALOR ELECTORAL<br>Apelante | KLAN202400173<br><br>cons. | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm. SJ2024CV01057<br><br>Sobre:<br>Solicitud de Autorización de Anuncio bajo el Artículo 10.006 de la Ley 222-2011, según enmendada |
| DEPARTAMENTO DE LA FAMILIA<br>Apelado<br><br>v.<br><br>OFICINA DEL CONTRALOR ELECTORAL<br><br>Apelante | KLAN202400324 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm. SJ2024CV02328<br><br>Sobre:<br>Revisión Judicial al amparo del Artículo 10.006 (6) de la Ley 222-2011 |

Panel integrado por su presidente, el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

Adames Soto, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de mayo de 2024.

Nos corresponde dilucidar si ciertos banderines, telones de fondo *(backdrops)*, camisas y *jackets*, identificados con el logo del Gobierno de Puerto Rico y el nombre Departamento de la Familia (DF), puestos en un fondo predominantemente azul, a ser usados por empleados de dicha agencia en actividades oficiales, **deben ser considerados como *anuncios*,**

para fines de la legislación que establece la veda electoral, y su jurisprudencia interpretativa. ¿Lleva un mensaje político-partidista, aunque sea de manera solapada, que el DF y sus empleados utilicen los objetos descritos en actividades oficiales durante el periodo de veda electoral? La Oficina del Contralor Electoral (OCE) juzgó que los tales sí constituyen *anuncios,* sujetos a la veda electoral, y una mayoría de este Panel también así lo interpreta. Por tanto, procede revocar la determinación del TPI apelada, mediante la cual dicho foro primario acogió una acepción muy restrictiva del concepto *anuncio* propuesta por el DF, subvirtiendo así el claro propósito legislativo que se persigue con la veda electoral.

Los asuntos arriba mencionados constituyen la sustancia de las controversias alzadas por la OCE ante nosotros, a través de sendos recursos de apelación, identificados con los alfanuméricos KLAN202400173 y KLAN202400324, cuya consolidación ordenamos.

## I.  Resumen del tracto procesal

Como se puede advertir de la breve introducción, el tracto procesal de los casos ante nuestra consideración ubica en el contexto de la veda publicitaria que inicia cada año electoral, según así se establece en el Art. 10.006 de la Ley Núm. 222-2011, 16 LPRA sec. 630(f), (Ley Núm. 222). A continuación, atenderemos las incidencias procesales de cada recurso de *certiorari* presentado de manera particularizada, aunque la aplicación del derecho correspondiente les sea común.

### A. KLCE202400173

Por causa de lo dispuesto en la Ley Núm. 222, (en cuyo contenido nos detendremos más adelante), el 8 de enero de 2024 el DF presentó ante la OCE una *Solicitud de Autorización*, identificada como OCE-SA-2024-00403, para que se le permitiera distribuir y utilizar por sus empleados durante el periodo de veda electoral, dos tipos de camisas y un *jacket* impermeable, que contenían: el logo del Gobierno de Puerto Rico; el nombre

completo del DF; en un fondo predominantemente azul, con unas partes de color negro el *jacket* y otras de color verde las camisas[1].

Sin embargo, el 18 de enero de 2024, la OCE determinó denegar la solicitud del DF, *pues en la combinación de colores utilizada* **predomina el color de un partido político inscrito en la Comisión Estatal de Elecciones**. *La agencia debía tener conocimiento del comienzo de la veda publicitaria y abstenerse del uso de artículos no permitidos[2]*. (Énfasis provisto).

Inconforme, el DF solicitó reconsideración ante la propia OCE, esgrimiendo que: (1) las camisas eran color azul marino oscuro y el *jacket* color *navy*, por tanto, no del color del partido político; (2) las camisas, como los *jackets*, fueron entregados a los empleados en julio de 2022, y otros fueron distribuidos en octubre y diciembre de 2023, antes del comienzo de la veda electoral.

Habiendo examinado tal petición del DF, la OCE decidió denegarla, reiterándose así en su dictamen. Al atender los fundamentos presentados por el DF para solicitar la reconsideración, la OCE determinó lo siguiente: (1) según lo dispone el Artículo 1 del Reglamento del Partido Nuevo Progresista (PNP), aprobado el 20 de marzo de 2022, el color de dicho partido es el azul, e incluye una variedad de tonalidades de azul; (2) aunque la entrega y distribución de tales piezas de vestir hubiese sido realizada a los empleados del DF antes de entrar en vigor la veda publicitaria, la agencia está facultada para, mediante orden administrativa, instruir a sus empleados a no utilizarlas en el lugar de trabajo durante la vigencia de la veda[3]. Concluyó indicando que la agencia sabía, o debía saber, que en el año electoral no podría usar el color azul en sus

---

[1] La imagen del *jacket* y las camisas fue incluida en el Anejo I del recurso de *apelación* bajo examen, págs. 18-21.
[2] Apéndice I del recurso de *apelación*, pág. 10.
[3] *Íd*, pág. 16.

uniformes, toda vez que es el color oficial del PNP, y también es el usado por el gobernador incumbente que se encuentra en campaña electoral.

En desacuerdo, el DF instó una *Solicitud de revisión judicial* ante el TPI[4]. En esencia, se reiteró en lo que ya había aducido en la *Moción de reconsideración* ante la OCE, sosteniendo que los colores utilizados en las camisas y *jackets* no se asemejan a los del PNP, y que la regla que citó la OCE del Reglamento Núm. 39, infra, tampoco resulta aplicable a los artículos evaluados.

En respuesta, el TPI emitió una *Orden de Mostrar Causa* (OMC) contra la OCE, por la cual no debía concederse el remedio solicitado por el DF.

A raíz de esto, la OCE compareció ante el TPI mediante escrito exponiendo las razones por las cuales no se debía conceder el remedio procurado por el DF, y, al contrario, procedía que se dictara sentencia por las alegaciones a su favor.

Así las cosas, el 19 de febrero de 2024 fue celebrada una vista argumentativa ante el foro primario, —aunque fue admitida cierta prueba documental—, que dio lugar a la revocación del dictamen administrativo, mediante *Sentencia* de 14 de febrero de 2024. Razonó el TPI al revocar a la OCE, en lo esencial, que las camisas y *jackets* en cuestión no constituyen un *anuncio*, según este término es definido por la Sección 1.5 del Reglamento Núm. 39, infra. Al así concluir, indicó que no había controversia en que **las piezas de vestir son de color azul marino, llevan el logo del gobierno y se utilizan como uniforme por los empleados durante actividades externas de la agencia al ofrecer servicios a la ciudadanía**, (añadió que las camisas tienen un color verde

---

[4] Por virtud del Art. 10.006(6) de la Ley 222, 16 LPRA sec. 630(f), toda revisión o apelación relacionada a gastos de difusión pública deberá ser presentada ante el TPI. Es decir, contrario a la norma general de que las Resoluciones finales administrativas son revisadas por este Tribunal de Apelaciones, Art. 4.002 de la Ley 201-2003, según enmendada y la Sec. 4.2 de la Ley 38-2017, según enmendada, en los casos en que la OCE emite una determinación bajo la legislación en discusión, la parte que pretenda la revisión tendrá que acudir primero ante el TPI.

predominantemente en el costado). (Énfasis provisto). Aseveró que, *más allá de eso, **ni las camisas ni el jacket tienen algún tipo de mensaje que de alguna manera pueda aludir a algún otro logro, realización, proyección, plan o mensaje que favorezca al PNP**[5]*. (Énfasis provisto).

Juzgando la OCE que el TPI incidió al así concluir, acude ante nosotros mediante recurso de *apelación*, esgrimiendo el siguiente error:

> Erró el Tribunal de Primera Instancia al determinar que las camisas y el *jacket* azul que el Departamento de la Familia sometió para la evaluación de la OCE no contienen mensajes que puedan aludir a logro, realización, proyección, plan o mensaje que favorezca al PNP.

Por su parte, el DF, a través de la Oficina del Procurador General, (el Procurador), presentó *Alegato del Gobierno de Puerto Rico*, oponiéndose a los planteamientos de la OCE.

### B. KLAN2024000324

En este caso el DF presentó otra *Solicitud de Autorización* ante la OCE, al que se le identificó con el alfanumérico OCE-SA-2024-04195, peticionando la autorización de unos banderines y un telón de fondo (*backdrop*) a ser utilizados en actividades oficiales, los cuales contienen el logo de la agencia y del Gobierno de Puerto Rico, en un fondo azul[6].

En respuesta, la OCE emitió una *Determinación* en la que aprobó la autorización, **pero con la siguiente condición**, *en la combinación de colores utilizada **no podrá predominar el color, en cualquiera de sus tonalidades, de un partido político inscrito en la Comisión Estatal de Elecciones**. **Por lo tanto, deberán modificar el color azul en el "backdrop" y los banderines**[7]*. (Énfasis provisto). Indicó que el cumplimiento con la condición impuesta permitirá que el anuncio se ajuste al Artículo 10.006 de la Ley Núm. 222.

---

[5] Apéndice VII del recurso de *apelación*, págs. 409-415.
[6] Apéndice II del recurso de *apelación* bajo examen, pág. 35.
[7] *Íd*, pág. 26.

En desacuerdo, el DF instó una *Moción en solicitud de reconsideración* ante la propia OCE. Presentó como argumento principal para su solicitud que el *backdrop* ni los banderines constituyen anuncios conforme esto es definido en el Reglamento 39, infra. Abundó sobre el mismo argumento esgrimiendo que tales objetos no contienen mensaje de ninguna clase, simplemente identifican a una agencia, en este caso, el DF, por lo que no cualificaban como anuncios. Además, sostuvo que dichos artículos fueron adquiridos antes de la veda electoral, y su distribución también ocurrió previo a que iniciara esta[8].

No obstante, la OCE emitió *Determinación sobre solicitud de reconsideración*[9], denegando la petición de reconsideración. Razonó la OCE que la Sección 1.5(3) del Reglamento 39, infra, define los *artículos de promoción* como cualquier medio que sirva para llevar un anuncio, por lo que a los banderines y al *backdrop* sí le aplican los requisitos que dirigen la fiscalización de los gastos por difusión pública. En lo específico, explicó que el enmarcado del logo de la agencia en un banderín o *backdrop* color azul identifica la agencia como el Departamento de la Familia del PNP y Pedro Pierluisi. Añadió que el uso del color azul en el caso que nos ocupa tiene una influencia solapada de un partido político mediante anuncios, en este caso, el uso del color del partido cuyo gobernador rige el Poder Ejecutivo. Explicó que, **en este contexto, los colores por sí tienen un significado, y el PNP utiliza desde su fundación el color azul para identificarse**. Advirtió que, **de todo el universo de colores a escogerse, la agencia eligió el color azul royal, que es uno de los colores que usa el PNP y el gobernador incumbente para identificarse**. Finalizó indicando que la veda durante el año electoral ha estado vigente desde el 1974, y ha subsistido a través de distintas legislaciones, de modo que el DF sabía o

---

[8] Anejo I del recurso de *apelación*, págs. 13-15.
[9] *Íd.,* págs. 16-17.

debía saber que en el año electoral no podría usar los banderines y *backdrop* con el color azul[10].

Inconforme, el DF presentó una *Solicitud de Revisión Judicial* ante el TPI. En esta el DF reiteró su teoría legal de que los banderines y el *backdrop* no constituían anuncios, conforme estos se definen en la Sección 1.5(1) del Reglamento 39, infra. Sobre lo mismo, afirmó que tales objetos **no contienen mensaje de clase alguna**, simplemente identifican a la agencia. Advirtió que, contrario a lo afirmado en la denegatoria de reconsideración, los objetos identifican a la agencia, pero no contienen el nombre de Pedro Pierluisi. Propuso como pregunta retórica, si se puede razonablemente pensar que el voto de alguna persona pudiera ser influenciado por los banderines y el *backdrop*.

En respuesta, el TPI emitió una *OMC* a la OCE para que mostrara causa por la cual no debía revocar la determinación cuya revisión solicitaba el DF.

Una vez más, la OCE presentó una *Moción en cumplimiento de la OMC*, a la que añadió una solicitud para que se dictara sentencia por las alegaciones. Explicó que el Art. 10.006(2) de la Ley Núm. 222 es claro al establecer los contenidos prohibidos dentro de los anuncios que se pretenden publicar durante la veda electoral. En particular, arguyó que el inciso tercero (3) del referido artículo incluye como contenido prohibido por la veda, entre otros, aquellos con fines político-partidistas o electorales, la utilización de símbolos relacionados con campañas políticas, al igual que colores de partidos políticos. Añadió que la Sección 2.10 del Reglamento 39, infra, impone como requisito a los anuncios, **que en la combinación de colores a ser utilizados por las agencias en sus anuncios no podrá**

---

[10] Nos advierte el Procurador en su *Alegato,* **con razón**, que, en la *Determinación sobre solicitud de reconsideración* bajo discusión, la OCE no levantó defensa o argumento alguno sobre un posible impedimento colateral por resolución administrativa previa, solo alzando tal planteamiento, por primera vez, en el recurso de apelación KLAN202400324, (como se sabe, las defensas afirmativas no levantadas de manera oportuna se tienen por renunciadas). Sin embargo, por lo que discutiremos más adelante, ello no cambia en modo alguno nuestra determinación final del caso.

**dominar el color o la combinación de colores asociados a los usados por el gobernador incumbente o el partido político en que milita el gobernador incumbente**. Sobre el significado que tienen los colores en los anuncios, citó jurisprudencia federal y local. Finalmente, incluyó una argumentación sobre un alegado impedimento colateral por sentencia, con relación a las circunstancias en que, antes de que fuera presentada la *Solicitud de autorización bajo examen,* ya la OCE había determinado sobre las condiciones en que permitió el uso del logo del gobierno en las agencias en general, **advirtiendo que no era permitido la predominancia de un color relacionado a un partido político**[11].

Trabada la controversia, el TPI dio lugar a la celebración de una vista argumentativa, —aunque admitió cierta prueba documental—, cuyo resultado fue la revocación mediante *Sentencia* del dictamen emitido por la OCE. Siguiendo idéntico razonamiento al de la *Sentencia* emitida en el caso de las camisetas y el *jacket,* antes discutida, en este dictamen el TPI también concluyó que, examinados los banderines y el *backdrop* en corte abierta, estos no constituían *anuncios.* Al así determinar, indicó que en los objetos se podía apreciar que tenían impresos el logo del Gobierno, junto a las palabras *Departamento de Familia,* y poseían varias tonalidades, que iban desde el color azul oscuro, pasando por el negro, hacia el violeta. Añadió que, más allá de esto, tales objetos *no contienen ningún tipo de mensaje que de alguna manera pueda aludir a algún logro, realización, proyección, plan o mensaje que favorezca al PNP.*

Inconforme, la OCE también acude a nosotros de dicha adjudicación, mediante recurso de *apelación,* esgrimiendo los siguientes errores:

> Erró el TPI al determinar que la determinación en el caso OCE-SA-2023-00076 no constituye cosa juzgada y desautoriza el uso del color azul en fondos y *backdrops* para la totalidad de la Rama Ejecutiva.

---

[11] *Íd.,* págs. 30-51.

> Erró el TPI al determinar que los banderines y *backdrop* azul que el DF sometió para la evaluación de la OCE no constituyen un anuncio ni mensajes que puedan aludir a logro, realización, proyección, plan o mensaje que favorezca al PNP.

Junto al recurso de *apelación* la OCE también acompañó una *Moción solicitando Orden en auxilio de jurisdicción y solicitando consolidación de apelaciones.*

En consideración a esta petición, el 4 de abril de 2024, emitimos una *Resolución:* (a) denegando paralizar los efectos de la *Sentencia* apelada[12]; (b) ordenando la consolidación de los recursos de apelación instados por la OCE y; (c) concediendo un término de cinco (5) días al Procurador para que fijara posición sobre los méritos de ambos recursos.

En cumplimiento, el Procurador presentó oportuno *Alegato del Gobierno de Puerto Rico* con relación a cada uno de los recursos presentados por la OCE.

Contando con las posiciones de las partes, estamos en condiciones de decidir.

**II.  Exposición de Derecho**

a.

Comenzamos señalando que tenemos ante nosotros una controversia esencialmente de derecho, pues la vista realizada ante el TPI fue argumentativa, y contamos con los documentos (imágenes) que el foro *a quo* apreció para llegar a su conclusión[13]. A su vez, en el proceso administrativo llevado a cabo ante la OCE, que precedió la vista celebrada ante el TPI, también se prescindió de considerar prueba testifical, limitándose a la valoración de las imágenes de los objetos aludidos, basando la determinación en una interpretación de derecho.

---

[12] En esta *Resolución* se hizo constar que el juez aquí ponente, Hon. Adames Soto, hubiese ordenado la paralización de los efectos de la *Sentencia* apelada, según lo solicitó la OCE.

[13] Claro, la apreciación de las imágenes u objetos por el TPI supera el marco de una vista *meramente argumentativa*, pues necesariamente fue evaluada dicha prueba documental. En cualquier caso, lo cierto es que estamos en idéntica posición que el foro primario para aquilatar tal tipo de prueba. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 895 (2008); *Castrillo v. Maldonado* 95 DPR 885, 889 (1969).

b.

Entrados propiamente en la discusión del derecho a aplicar, cabe iniciar mencionando que la base principal de la veda electoral ubica en la Constitución de Puerto Rico. En específico, la Sección 9 del Art. VI de nuestra Constitución manda que: *solo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley*. LPRA, Tomo 1.

A partir del texto citado, nuestro Tribunal Supremo ha manifestado que, desde sus inicios, la veda electoral tuvo como propósito *prohibir la utilización de fondos públicos para hacer campaña política*. Este principio, a su vez, responde al postulado de igualdad inmerso en nuestra Constitución, que persigue lograr una paridad económica entre los partidos políticos para la divulgación de ideas y mensajes en nuestro país. *Miranda v. CEE*, 141 DPR 775 (1996); *P.N.P. v. Tribunal Electoral*, 104 DPR 741 (1976); *Marrero v. Mun. De Morovis*, 115 DPR 643 (1984). El aludido concepto de *igualdad económica* con relación a la distribución de fondos públicos en el proceso electoral impide que un partido que ostente el poder de gobernar al pueblo en un momento dado utilice tales fondos para hacer campaña política. *Íd.*

c.

Una vez resaltado lo anterior, y según certeramente lo señaló el Procurador en el *Alegato del Gobierno de Puerto Rico*, KLAN202400173, conviene notar que el Artículo 14.6 del Código Electoral de 2020 enmendó la Ley Núm. 222, a los fines de añadir el Artículo 10.006 sobre gastos de difusión pública del Gobierno de Puerto Rico en año de elecciones generales, actual articulado que establece la llamada veda electoral. Así enmendado, el referido artículo dispone al presente como sigue:

> "(2) Durante el año en que se realice una elección
> general se prohíbe a todo departamento, **agencia**, negociado,

junta, oficina, dependencia y corporación pública **adscrita a la Rama Ejecutiva**; a los gobiernos municipales; a la Asamblea Legislativa y a todos los componentes de la Rama Judicial a desembolsar fondos públicos del Gobierno de Puerto Rico con el propósito de exponer logros, realizaciones, proyecciones, planes o **mensajes y contenidos** con fines políticos-partidistas o electorales que busquen resaltar, destacar o desfavorecer a un aspirante, candidato o funcionario electo, **partido político** o comité sin que previamente se haya solicitado autorización a la Oficina del Contralor Electoral dentro de los términos, los procedimientos y los requisitos ordinarios que para tales fines se hayan establecido en el reglamento de "Fiscalización de Gastos de Difusión Pública". Esta prohibición está dirigida a la compra de tiempo y espacio en los medios de comunicación y difusión, así como a la compra y la distribución de materiales propagandísticos o promocionales." (Énfasis provisto).

La prohibición contenida en el estatuto citado tuvo su origen en el derogado Artículo 3-014 del Código Electoral de Puerto Rico de 1974, Ley Núm. 1 de 13 de febrero de 1974, 16 LPRA sec. 2094. Es de suma importancia destacar que, aunque con algunas variaciones, **la referida prohibición (veda electoral) ha sido incorporada en todas las leyes electorales posteriores a 1974**. *Miranda v. CEE*, 141 DPR 775 (1996).

A su vez, bajo el poder delegado a la OCE para aprobar un *Reglamento de Gastos de Fiscalización de Difusión Pública[14]*, el 6 de julio de 2020 fue aprobado el Reglamento Núm. 39, (Reglamento 39). En la Sección 1.5 de dicho Reglamento, según enmendado, bajo *Definiciones,* se dispone, en lo pertinente, lo siguiente:

> Las palabras y frases usadas en este Reglamento se interpretarán según el contexto en que sean usadas y tendrán el significado aceptado por el uso común y corriente o aquel significado que le adscriba la Ley 222-2011, según enmendada.
>
> Los siguientes términos usados en este Reglamento tendrán el significado que a continuación se expresa:
>
> 1. **Anuncio** – soporte visual o auditivo en que se transmite o difunde un mensaje al público a partir del 1ro. de enero de cada año de elecciones generales y hasta que se haya completado el escrutinio general de esta y se hayan certificado sus resultados oficiales y finales. Incluye todo material que sirva como soporte visual o

---

[14] Art. 10.006(1) de la Ley Núm. 222, 16 LPRA SEC. 630(F)(1).

> auditivo que haya sido comprado, adquirido, producido o montado previo al año en que celebre la elección general. Ejemplo: . . . letreros anunciando obras en las vías públicas, pautas en medios de comunicación, entre otros.
>
> 2. . . .
>
> 3. Artículos de promoción – Se refiere a cualquier artículo que sirva para llevar un anuncio, tales como pegatinas, tazas, vasos, bolígrafos, "pen drives", libretas, cartapacios, camisas, uniformes, abrigos, prendedores, postales, carteles, cruzacalles, calcomanías, *flyers,* hojas sueltas, calcomanías, papel timbrado, tarjetas de presentación, entre otros, aun cuando hayan sido adquiridos en periodos anteriores al año electoral.

Además, la Sección 2.10(2) del mismo Reglamento, dispone que todo anuncio que se presente a la consideración de la OCE deberá cumplir con, entre otros, lo siguiente:

> (2) En la combinación de colores **usada no podrán dominar el color, en cualquiera de sus tonalidades, de un partido político inscrito ante la Comisión Estatal de Elecciones.**
>
> (Énfasis provisto).

Por cuanto, como advertimos, la veda electoral ha sido consistentemente sostenida por el Legislador, de manera casi idéntica, a lo largo de décadas, esto le ha permitido a nuestro Tribunal Supremo tener amplia oportunidad para interpretarla, dejando para beneficio de los foros de menor jerarquía un rastro del ejercicio hermenéutico a los que atenernos.

Así, por ejemplo, en un razonado voto disidente sobre el tema, el juez Negrón García caracterizó la prohibición contenida en el estatuto como *amplia. P.P.D. v. Junta Revisora Electoral,* supra. De manera muy previsora, -y en lo que eventualmente se constituiría en la posición mayoritaria del Tribunal Supremo-, en ese mismo voto disidente el juez Negrón García enumeró tres factores que, a su juicio, *encarnan el principio de alta moralidad en la administración pública* impulsado con la veda electoral: (a) directamente evitar **que las agencias gubernamentales** usando fondos

públicos y **so pretexto de exponer sus ejecutorias o planes**, **realicen solapadamente campaña en favor del partido político en poder y aquellos incumbentes que aspiran nuevamente a ser electos**; (2) reducir ventajas reconocidas que gozan los candidatos incumbentes —a través del acceso a los electores y público en general por medio de televisión, prensa y radio— que el solo ejercicio y exposición del cargo conlleva sobre sus opositores; e (3) indirectamente, frenar los excesos y economizar al erario público y a los contribuyentes los gastos ordinarios de publicidad en año eleccionario. (Énfasis y subrayado provistos). *Íd.*, pág. 467.

A pocos años de lo anterior, en *Romero Barceló v. Hernández Agosto*, 115 DPR 368 (1984), se nos dijo que el estatuto que contiene la veda electoral, *refleja el interés en descontinuar durante el periodo eleccionario la práctica de* **las agencias gubernamentales** *de hacer campaña política mediante la publicación de anuncios sobre sus logros y planes.* (Énfasis provisto).

Más adelante, en *C.E.E. v. Dpto. de Estado*, 134 DPR 927 (1993), **al precisar sobre el alcance de la prohibición de** <u>***anuncios gubernamentales***</u> contenida en la ley, el alto Foro advirtió que de su nomenclatura **surgía inequívocamente la intención legislativa de excluir definitivamente del proceso político** *la influencia solapada que el partido en el poder pueda tener mediante el uso de los anuncios gubernamentales*. (Énfasis y subrayado provistos). Dijo, además, que para que se logre dicha *clara intención legislativa,* estaban ***compelidos a*** <u>***interpretar el alcance del estatuto bajo examen de modo que prevalezca la importante política pública que lo inspira,***</u> evitando así ***conceder un amplio margen*** a las agencias *y departamentos para obviar o derrotar la política pública* allí encarnada. (Énfasis y subrayado y provistos). *Íd.* En la misma Opinión, nuevamente el juez Negrón García, esta vez mediante un voto de conformidad, advirtió que, con

referencia a los anuncios político-partidistas que intentan colocar las agencias gubernamentales en época eleccionaria; *las agencias de publicidad cuentan con expertos conocedores de la conducta humana. Ideas, **imágenes, detalles visuales y gráficos <u>aparentemente insignificantes</u> pueden esconder solapadamente un mensaje político**. Por lo tanto, no podemos abstraernos de los adelantos de la industria de las comunicaciones y del desarrollo de complejas técnicas **para encubrir mensajes***. (Énfasis y subrayado provistos). *Íd*, pág. 944.

En la esencial Opinión plasmada en *Miranda v. C.E.E.*, supra, en su pág. 788, el Tribunal Supremo, luego de advertir sobre **la deferencia que merecen las interpretaciones de derecho provenientes de la agencia a cuyo cargo está la aplicación de la veda electoral**, (asunto en el que nos detendremos más adelante), admitió *la interpretación expandida* dada por el foro primario **al significado de *<u>anuncio</u>* contenido en el estatuto**. (Énfasis y subrayado provistos). Cónsono con lo cual, zanjó que, en atención al cumplimiento con el propósito legislativo perseguido con el establecimiento de la veda electoral, era procedente interpretar con amplitud la expresión medios de difusión, para lo cual pasó a citar el extracto del voto concurrente del juez Negrón García, que citamos en el párrafo que antecede, añadiendo que la publicidad *es el arte de dar a conocer las excelencias de un artículo, de un servicio o de una idea, **por todos los medios imaginables** … carteles, letreros luminosos … y todo cuanto pueda llamar la atención del presunto cliente o adepto*. Además, afirmó que, bajo el concepto *anuncios* de esta legislación, han sido incluidos: pegatinas (bumper stikers), rótulos, zafacones con emblemas y anuncios **en camisetas**. (Énfasis provisto). *Íd*, págs. 791-792. Valga resaltar que el juez Negrón García, una vez más, incluyó una aguda declaración en otro voto de conformidad, advirtiendo que *no es válido ni permisible el uso de fondos públicos para anuncios y campañas publicitarias*

*propagandistas de carácter político-partidista,* **sea clara, indirecta, sutil, disimulada,** *sofisticada* **o esté entremezclada con actividades informativas legítimas**. (Énfasis provisto). *Íd*, pág. 794.

En *PPD v. Gobernador I*, 139 DPR 643, 690 (1995), se indicó que cuando el Gobierno, en el ejercicio de su facultad o deber de informar a la ciudadanía, *utiliza o incorpora símbolos, emblemas,* **colores**, *fotografías o lemas de naturaleza político-partidista,* **estamos impedidos constitucionalmente de reconocerle fin público alguno a dicha expresión gubernamental**. *Tampoco podemos reconocer validez constitucional a cualquier expresión gubernamental difundida mediante uso de fondos públicos* **cuando ésta claramente constituye un subterfugio para conferir una ventaja a un candidato o a un partido político**, *o para adelantar sus intereses.* (Énfasis provisto). Tanto en la Opinión mayoritaria, como en las tres Opiniones concurrentes emitidas por los jueces Negrón García, Hernández Denton, y Fuster Berlingeri, y la Opinión concurrente y disidente del juez Rebollo López, se resaltó la importancia de considerar **los colores** que se utilizan en los anuncios gubernamentales como medios para encubrir campañas de corte político-partidista, de manera solapada. Ver, por ejemplo, las páginas 729, 749, 784, 788, 806 y 807. Acudiendo a las palabras del juez Fuster Berlingeri en su Opinión concurrente, [*e*]*l problema que se plantea en los casos de autos es precisamente el de anuncios políticos* **que se disfrazan como auténtica comunicación gubernamental**. *Se trata de un problema que no se puede resolver adecuadamente* **si no se extirpa de raíz la posibilidad misma de aprovechar políticamente el anuncio oficial. A ningún funcionario público más o menos avezado se le ocurriría usar los fondos gubernamentales para pagar anuncios crudamente políticos. Lo que se hace más bien es aprovechar la zona gris de los anuncios para insertar solapados contenidos políticos**. (Énfasis provisto). *Íd.,* pág. 795.

Esta vez en una *Sentencia, P.N.P. v. Hon. Sila M. Calderón*, 162 DPR 239 (2004), se nos narra en el voto disidente emitido por el juez Efraín Rivera Pérez, que el P.N.P., como parte demandante-peticionaria, solicitó como remedio al TPI, entre otros, ***que impidiera el uso de los colores rojo y amarillo en los anuncios gubernamentales donde apareciera el nombre de la Gobernadora***. Ello por cuanto la demandada ***había utilizado como colores distintivos de su campaña el rojo y el amarillo <u>en diferentes tonalidades</u>, además del color distintivo del P.P.D., el rojo y el blanco***. (Énfasis y subrayado provistos). Luego de este mismo juez recalcar sobre toda la jurisprudencia que precedía, relativa a los principios que debían dirigir la interpretación del estatuto que establecía la veda electoral, aseveró que en estos casos la evaluación de la conducta gubernamental impugnada tenía que realizarse en su TOTALIDAD. (Mayúsculas en el original). *Íd*, pág. 295. A renglón seguido, pasó a hacer un análisis sobre una multiplicidad de anuncios colocados por distintas agencias gubernamentales en diferentes medios públicos, concluyendo que, *aunque tenían un mensaje que podría, de una forma u otra, perseguir un mensaje público,* ***no podían estar enmarcados como parte de un mensaje político partidista, con fotografías del gobernante, <u>con los colores que usó de distintivo en su campaña política</u>, con un tema claramente de corte político-partidista***. (Énfasis y subrayado provistos). Enfatizó en que los mensajes políticos, fotografías del gobernante y ***sus colores distintivos en la arena política en la campaña gubernamental, era contraria al fin público***. (Énfasis provisto). *Íd.*

El juez, cuya disidencia seguimos exponiendo, concluyó que, analizada la TOTALIDAD de la campaña impugnada, esta reflejaba claramente un carácter político-partidista, *que no era disimulada, sutil, ni indirecta.* Dicho lo cual cerró su ponencia con la siguiente expresión, [*l]a justicia debe ser inmaculada no sólo en su realidad sino también en su*

*apariencia externa.* ***Sobre este particular es de vital importancia la consistencia. Ser consistente nos brinda tranquilidad de conciencia. La inconsistencia puede resultar en la injusticia.*** (Énfasis provisto). *Íd*, págs. 313-315.

En resumidas cuentas, el referido voto disidente resultó en una clara convocatoria a nuestro Tribunal Supremo para que procurara la aplicación coherente, firme, estable **e igual** de los criterios para evaluar si un anuncio gubernamental infringe la veda electoral, **cuando esté en el poder un partido político u otro, sin hacer acepción por partidos**[15].

En *Acevedo Vilá v. C.E.E.*, 172 DPR 971 (2007), el Tribunal Supremo retoma la ruta emprendida de velar porque se cumpla el propósito legislativo que ha inspirado por tantos años la veda electoral. En este caso, le correspondió al alto Foro *determinar el alcance de la frase gastos para la compra de tiempo y espacio en los medios de difusión pública.* Con mayor particularidad, la controversia fue identificada de la siguiente manera, *determinar si el estatuto que prohíbe la difusión de anuncios gubernamentales en periodos de veda electoral, **debe interpretarse ampliamente para hacer cumplir su propósito legislativo** o si, en cambio, debe interpretarse de forma restrictiva por contener disposiciones de naturaleza punitiva.* (Énfasis y subrayado provistos). *Íd.* Luego de examinar la jurisprudencia que precedía, en torno a cómo se debía interpretar la ley que impone la veda electoral, el Tribunal Supremo concluyó, sin ambages, que, ***ante la clara intención legislativa de proteger el principio de igualdad electoral, resulta inevitable concluir que, independientemente de las consecuencias que pueda***

---

[15] Al analizar este caso, el profesor J.J. Álvarez González afirmó, entre otras, que parecía que con esta Sentencia el Tribunal Supremo *había abandonado la cruzada comenzada* en la jurisprudencia que le precedía, aludiendo al análisis amplio dado a los casos relativos a la veda electoral. En particular, en cuanto al **uso de los colores** en los anuncios de gobierno, indicó que resultaba indisputable que la entonces alcaldesa, y luego gobernadora, Sila M. Calderón **usaba el amarillo como color distintivo**. A lo que añadió "[t]odo el que haya estado en el País desde entonces sabe que ese patrón continuó." J.J. Álvarez González, *supra*, en las págs. 603 y 606.

*tener la infracción del estatuto, **el alcance que se le ha atribuido es*** ***amplio***. *Íd.,* pág. 987. En ese caso se añadió que, *[a]un cuando reconocemos que el razonamiento del Tribunal de Apelaciones es cónsono con una lectura literal del texto de la ley,* ***estamos impedidos de acogerlo por entender que*** **no está en armonía con nuestra jurisprudencia** **interpretativa sobre el alcance, propósito y contenido de la veda** **electoral**. (Énfasis y subrayado provistos). *Íd.*, pág. 988. Es decir, el Tribunal Supremo se decantó, una vez más, **en favor de una interpretación amplia, no *restringida*** de la ley que establece la veda electoral, dando así prominencia al consistente propósito expresado por el Legislador a través del tiempo.

En definitiva, a lo largo de décadas de interpretación de los distintos estatutos que contienen la veda electoral por nuestro Tribunal Supremo, **prevalece una interpretación amplia, expansiva que logre alcanzar el claro propósito legislativo sobre este mandato reiterado[16]**. Además, sin duda, los colores utilizados en los anuncios, entre otros criterios, son pieza esencial al verificar si, de manera solapada, una agencia pública está transmitiendo un mensaje político partidista, por sutil o disimulado que pretenda ser.

d.

El Art. 11.003 de la Ley Núm. 222, 16 LPRA sec. 631(c) específicamente identifica *los criterios de revisión* que los tribunales debemos observar al examinar las determinaciones surgidas de la OCE. En lo particular, el referido artículo dispone lo siguiente:

> Las determinaciones de la Oficina del Contralor Electoral al amparo de este capítulo se sostendrán de existir evidencia sustancial que obre en el expediente administrativo. **Las determinaciones de derecho serán revisables en todos sus aspectos**, **con la debida deferencia a la interpretación que haga la Oficina del Contralor Electoral al amparo de este capítulo al**

---

[16] Esta es la conclusión a la que también llega el profesor J. M. Farinacci Fernós en su muy ilustrado artículo de revista titulado *La Veda Electoral.* 54 Rev. Jur. U. Inter P.R. 27.

**administrar e implementar este capítulo y los reglamentos promulgados al amparo del mismo**.

(Énfasis y subrayado provistos).


Cabe distinguir tal porción de la Ley 222 citada, de lo que dispone la **Sección 4.5 de la Ley Núm. 38-2017**, según enmendada, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, (LPAU), 3 LPRA sec. 9675, en la que se establece que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Nótese que la Sección 4.5 de la LPAU citada **no hace alusión alguna a que se muestre deferencia por la interpretación que ofrezcan las agencias administrativas sobre sus leyes orgánicas o reglamentos**. Es decir que, contrario a lo que dispone la LPAU, en el Art. 11.003 de la Ley Núm. 222 antes citado, (veda electoral), **el Legislador incluyó expresamente que**, aunque también las determinaciones de derecho *serán revisables en todos sus aspectos*, tal ejercicio revisor-judicial necesariamente habrá de hacerse ***con la debida deferencia* *a la interpretación que haga la Oficina del Contralor Electoral al amparo de este capítulo al administrar e implementar este capítulo y los reglamentos promulgados al amparo del mismo.*** (Énfasis y subrayado provistos).

En consecuencia, juzgamos que, aunque sin renunciar a nuestra función interpretativa de la ley, por mandato del Art. 11.003 de la Ley Núm. 222, los foros revisores estamos llamados a no minimizar, eludir o despreciar las interpretaciones que sobre la veda electoral provengan de la OCE, pues ello daría al traste con el claro mandato legislativo resaltado.

Dicho lo anterior, (sobre la norma a seguir en el ejercicio revisor de los casos provenientes de la OCE), de todos modos, juzgamos ilustrativo indicar que contamos con abundante jurisprudencia que explica que, aún al revisar las determinaciones de los dictámenes finales de las agencias bajo la LPAU, *los tribunales apelativos han de conceder gran deferencia y*

*consideración a las decisiones de los organismos administrativos en vista de la vasta experiencia y conocimiento especializado. Graciani Rodríguez v. Garage Isla Verde, LLC,* 202 DPR 117, 126 (2019); *Mun. de San Juan v. Plaza Las Américas,* 169 DPR 310, 323 (2006); *Hernández Álvarez v. Centro Unido,* 168 DPR 592, 615–616 (2006). Por lo tanto, los tribunales deben ser *cautelosos al intervenir con las decisiones administrativas. Metropolitana, S.E. v. A.R.P.E.,* 138 DPR 200, 213 (1995); *Viajes Gallardo v. Clavell,* 131 DPR 275, 289–290 (1992). Por lo que, los tribunales revisores *no tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de las agencias. Otero v. Toyota,* 163 DPR 716, 729 (2005).

Juzgamos útil, además, recurrir a las expresiones que sobre la revisión judicial llevó a cabo nuestro Tribunal Supremo en *Miranda v. C.E.E.,* supra, siendo la controversia de derecho allí enfrentada análoga a la presentada en el caso ante nosotros, en tanto correspondió verificar la extensión del significado de *anuncio* en el estatuto que establecía la veda electoral entonces.

Tal como en el caso ante nuestra consideración, en *Miranda v. C.E.E.,* supra, nuestro Tribunal Supremo identificó que la determinación cuya revisión se solicitaba fue una fundamentada en una interpretación *de derecho.* Ante lo cual llamó la atención al hecho de que, *por ser los tribunales la autoridad final en la interpretación de estatutos y, en cuestiones de derecho, poseen la facultad para revisar sin sujeción a un criterio o una norma. Íd.,* pág. 787, citando a D. Fernández Quiñones, *Derecho Administrativo y Ley Uniforme de Procedimiento Administrativo,* 1ra ed., Bogotá, Ed. Forum, 1993, pág. 545. Sin embargo, de inmediato el mismo alto Foro advirtió que *también se ha reconocido que **las agencias son instrumentos necesarios para la interpretación de la ley, por lo que los tribunales prestarán su deferencia a éstas**.* (Énfasis provisto). *Íd.*

A tenor, el mismo Foro de mayor jerarquía puntualizó que los tribunales debemos conceder gran peso y deferencia a las interpretaciones que los organismos administrativos realizan de las leyes y los reglamentos que administran, por lo que **no podemos descartar libremente las conclusiones e interpretaciones de las agencias, sustituyendo el criterio de estas por el propio**. (Énfasis provisto). *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 266 (2007). Así, si la interpretación de la ley o reglamento que realiza determinada agencia administrativa es razonable, aunque no sea la única razonable, los tribunales debemos concederle deferencia. *Íd.* Más aún, los tribunales podrán sustituir el criterio de la agencia por el suyo únicamente cuando no encuentren una base racional para explicar la determinación administrativa. *Íd.*

**III.   Aplicación del Derecho a los hechos**

a.

El racional adoptado por el TPI para revocar a la OCE en las dos *Sentencia*s apeladas fue que, *un examen del derecho aplicable no permite concluir que* los objetos *presentados por el DF para ser autorizados constituyan anuncios*, según tal concepto es definido por la Ley Núm. 222 y el Reglamento 39, *por cuanto **no contienen mensaje de clase alguna, simplemente identifican a la agencia**. Ello, afirmó el tribunal *a quo*, porque las camisas, *jackets*, telón de fondo y banderines *no tienen algún tipo de mensaje que de alguna manera pueda aludir a algún logro, realización, proyección, plan o mensaje que favorezca al PNP*[17].

Sobre lo anterior, no podemos evitar iniciar señalando que, habría que hacer un esfuerzo enorme para no percatarse de la predominancia del azul en cada uno de los objetos aludidos, siendo tal color, en una de sus tonalidades, la constante hegemónica. **El uso predominante de una de las tonalidades del color azul en los artículos referidos, junto al**

---

[17] Anejo VII del recurso de *apelación* del KLAN202400173, pág. 415; Anejo V del recurso de *apelación* del KLAN202400324, pág. 128.

**estampado del *Departamento de la Familia*, el logo oficial del Gobierno de Puerto Rico, utilizados en actividades oficiales gubernamentales, por empleados públicos**, <u>**constituyen el mensaje**</u> que se desea transmitir a las personas expuestas a ellos, **relacionando la obra de gobierno que se realiza en la actividad oficial, con el partido político que ostenta el Poder Ejecutivo, el P.N.P**. Precisamente esta fue la situación que el Legislador se propuso extirpar al reiterarse en la prohibición prevista en la veda electoral, previendo que el partido que ostente el poder pretenda, aunque sea de manera solapada, disimulada, utilizar fondos públicos para adelantar su consigna política en plena campaña eleccionaria.

En lo que supone un retroceso de décadas sobre la manera *amplia* o *interpretación expandida* que la jurisprudencia ha dado al concepto *anuncio gubernamental* para fines de la veda electoral en *CEE v. Dpto. de Estado*, supra; *Miranda v. CEE*, supra; y *Acevedo Vilá v. CEE*, supra, tanto el TPI, como el Procurador, han decidido aferrarse a la interpretación más estrecha o restrictiva posible de dicho concepto, frustrando el propósito legislativo de la veda electoral. De esta manera, los apelados parecen razonar, bajo la acepción de *anuncio* gubernamental que promueven ante nosotros, que cabe identificar infracción a la veda electoral solo en casos donde las agencias públicas expresamente incluyan un *mensaje* político en los materiales que utilizan en sus actividades oficiales, entendido *mensaje* como la manifestación escrita expresa del contenido político partidista que se quiera transmitir. Repetimos, esto es patentemente contrario a la interpretación que sobre el concepto *anuncio* ha elaborado nuestro Tribunal Supremo, avalando **la expansión de la prohibición** *a toda forma de anuncio*, *Miranda v. CEE*, supra, **rechazando expresamente la interpretación restrictiva de dicho concepto**, y, al contrario, decantándose en favor de una ***interpretación amplia*** del mismo. *Acevedo*

*Vilá v. CEE*, supra. Ignoró el TPI, además, las constantes advertencias de nuestro Tribunal Supremo sobre los intentos de los gobernantes de distintos signos políticos, de influenciar a los electores a través de *ideas, detalles visuales, colores, y gráficos* <u>*aparentemente insignificantes que buscan esconder solapadamente un mensaje político,*</u> aunque lo disimulen a través de actividades informativas legítimas. (Énfasis y subrayado provistos). *CEE v. Dpto. de Estado*, supra; *Miranda v. CEE*, supra; *Acevedo Vilá v. CEE*, supra. La repetida admonición de nuestro Tribunal Supremo al acentuar que debemos velar por el cumplimiento del propósito legislativo plasmado en la veda electoral, debió de haber alertado al juzgador *a quo* sobre las técnicas publicitarias que utilizan las agencias para encubrir mensajes de corte político partidista.

b.

Detengámonos en la descripción de cada uno los artículos examinados por la OCE, y que este **no** aprobó como susceptibles de ser utilizados por el DF durante el periodo de veda electoral.





Como se observa, este *jacket* tiene una sola tonalidad de azul. Además, a la altura del pecho, en el área del corazón, tiene el logo del Gobierno de Puerto Rico, (como parte de dicho logo se utilizan varios colores, cuya presencia es mínima con relación al azul de fondo), junto al nombre *Departamento de la Familia*, escrito en letras mayúsculas, aunque *Familia* en un tamaño de letra más grande[18]. En el caso del *jacket*, resulta difícil o imposible evadir la predominancia del color azul. Igual conclusión aplica a la camisa con botones.

---

[18] Anejo 1 del recurso de *apelación*, KLAN202400173, págs. 18 y 19.





Así también, en las camisetas ilustradas (con o sin mangas) resulta indiscutible que el color **predominante** es el azul, y esto a pesar de que en sus costados también llevan verde. Semejante al *jacket* descrito, las camisas llevan el logo del Gobierno de Puerto Rico, (con los colores distintivos del logo, cuya presencia es mínima con relación al azul de fondo), y en el pecho, lado del corazón, aparece el nombre *Departamento de la Familia*, escrito en letras mayúsculas, aunque *Familia* en un tamaño de letra más grande[19].



---

[19] *Íd.*, págs. 20 y 21.



Finalmente, tanto en los banderines, como en el telón de fondo, resulta obvia, una vez más, la predominancia del azul, que sigue tonalidades semejantes a la de los artículos previamente descritos. En ambos aparece el logo del Gobierno de Puerto Rico y el nombre *Departamento de la Familia*, según fueron descritos estos en los artículos anteriores. En el banderín, en particular, el logo del Gobierno de Puerto Rico resulta de mayor proporción al comparársele con el que llevan el *jacket* y la camiseta, pero sin que ello afecte de manera alguna el fondo predominantemente azul[20].

c.

Según adelantamos, al sopesar la totalidad de los asuntos que acompañan la utilización de dichos artículos, y como se pretende seguir utilizando durante el periodo de veda electoral, es inescapable la conclusión de que el uso de estos, por empleados del Departamento de la Familia, durante actos oficiales de dicha agencia, tendrá o puede tener el

---

[20] Ver páginas 18, 19 y 35 del recurso de *apelación*, KLAN202400324.

efecto de lograr la vinculación de los colores, logo, actividad oficial y agencia, con el gobierno que ostenta actualmente el poder, el PNP, y se encuentra en medio de una campaña eleccionaria en que interesa ser reelegido. Bajo esta óptica, la imagen del total de tales elementos (color de los artículos, logo del gobierno, nombre del DF, empleados públicos así vestidos), a los que el DF expone a todas las personas que acudan a recibir sus servicios, es capaz de difundir, propagar y divulgar un mensaje de corte político partidista, aunque tal mensaje sea solapado, sutil, vinculando la obra de gobierno (servicios del DF), con el partido que lo ejerce, PNP.

No resulta casual, arbitrario, o cándido que, entre toda la paleta de colores que el Departamento de la Familia pudo escoger como color predominante en cada uno de los artículos descritos, eligiera el azul, color que está hincado en nuestra tradición política como el que utiliza el PNP para promover su ideario. Sobre lo mismo, tampoco hay fuente legal o reglamentaria alguna que el DF pueda esgrimir que justifique la elección del color azul de forma predominante en cada uno de los artículos que se dispone a utilizar en las actividades oficiales, sobre cualquier otro color.

Cabe aquí exclamar que *los jueces no vivimos en un vacío, **sabemos lo que el resto de la comunidad sabe***. (Énfasis provisto). *Pueblo v. Marrero*, 79 DPR 649, 658 (1956). Y lo que *el resto de la comunidad* sabe es que el PNP como partido político está tan identificado con el color azul, como el PPD lo está con el color rojo y el PIP[21] con el color verde.

Precisamente por lo explicado fue que en *P.N.P. v. Hon. Sila M. Calderón*, supra, el PNP solicitó al Tribunal que a la exgobernadora allí demandada se le impidiera utilizar la combinación del rojo y amarillo, con sus distintas tonalidades, en anuncios gubernamentales, pues se le imputaba haberlos utilizado previamente en su campaña política. En este sentido, dicho partido político reconoció en esa ocasión el gran peso que

---

[21] Partido Independentista Puertorriqueño.

tiene en el imaginario del pueblo puertorriqueño la identificación de un partido o candidato político con unos colores en específico en actividades de gobierno, tal como la jurisprudencia que precedía a dicho caso lo venía haciendo de manera consistente. Fue con referencia a este asunto que el profesor J.J. Alvarado González llamó la atención a que *todo el que haya estado en el País sabía, era notorio e indisputable* que la entonces gobernadora utilizaba el amarillo como su color distintivo de campaña política[22]. De la misma manera, sin duda, cabría afirmar aquí que todo el que esté en el País en la actualidad sabe el significado de la predominancia del color azul en artículos utilizados por las agencias públicas en actividades oficiales, máxime cuando al color se le acompaña la identificación del gobierno que ostenta el poder, a través del logo oficial del Gobierno de Puerto Rico y el nombre de la agencia que se encuentra ofreciendo los servicios.

Juzgamos que la deferencia que nos convoca el Legislador a mostrar por las determinaciones de derecho provenientes de la OCE sobre las leyes que le corresponde interpretar, según expresamente lo dispone el Art. 11.003 de la Ley Núm. 222, supra, debió ser motivo suficiente para que el TPI inclinara la balanza en favor de la decisión administrativa cuya revocación promovió el DF, máxime cuando se trató de una actuación ubicada dentro del marco del poder que le fue delegado y consistente con la política pública legislativa, según esta ha sido reiteradamente interpretada por nuestro Tribunal Supremo.

No obstante, aun superando la deferencia a la determinación de la OCE aludida, y asumiendo la función principalísima de los tribunales que supone la interpretación del derecho, nos resulta evidente que una definición de *anuncio* en el contexto descrito, que sea cónsona con el propósito legislativo que inspiró la veda electoral, y la jurisprudencia que

---

[22] J.J. Álvarez González, *Derecho Constitucional,* 74 Rev. Jur. UPR 597, 606 (2005).

guía su interpretación, también debió haber conducido a validar la restricción impuesta por la OCE a los artículos presentados por el DF para autorización durante la veda electoral. La muy restrictiva acepción de *anuncio* acogida por el foro apelado en este caso termina ***concediendo amplio margen* a las agencias *y departamentos para obviar o derrotar la política pública*,** lo que precisamente el Tribunal Supremo nos convocó a no permitir. *CEE v. Dpto de Estado*, supra. La interpretación restrictiva de *anuncio* dada por el TPI va a contracorriente de la *interpretación amplia* que toda la jurisprudencia discutida ha dado a dicho término cuando es utilizada en el contexto de la Ley Núm. 222. A fin de cuentas, si el TPI esperaba que el DF incluyera un *mensaje* político partidista de manera expresa en los materiales bajo examen, eludió toda la jurisprudencia que reiteradamente advierte sobre las tácticas publicitarias de las agencias de gobierno para, precisamente, *colar* el anuncio político de manera *solapada*. Como señaló el juez Fuster Berlingeri en su voto concurrente en *PPD v. Gobernador I*, supra, pág. 795, ***a ningún funcionario público más o menos avezado se le ocurriría usar los fondos gubernamentales para pagar <u>anuncios crudamente políticos</u>. Lo que se hace más bien es <u>aprovechar la zona gris de los anuncios</u> para <u>insertar solapados contenidos políticos</u>***. (Énfasis y subrayado provistos).

Dispuesto lo anterior, se hace innecesario discutir el segundo señalamiento de error esgrimido por la OCE en el KLAN202400324.

**IV. Parte dispositiva**

Por los fundamentos expuestos, *Revocamos* ambas *Sentencias* aquí apeladas. En consecuencia, se reestablecen las determinaciones de la OCE respecto a las prohibiciones de utilizar los artículos presentados por el DF para autorización.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

El Juez Bermúdez Torres disiente sin opinión escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones